**YORK PHARMACAL COMPANY, a Corporation (Plaintiff), Appellant,**

v.

**HENRY C. BECKMANN REALTY & INVESTMENT COMPANY, a Corporation (Defendant), Respondent.**

No. 29874.

St. Louis Court of Appeals.

Missouri.

July 2, 1957.

Jones & Alexander, D. Calhoun Jones, St. Louis, for appellant.

Rassieur, Long & Yawitz, Milton Yawitz, Allen A. Yoder, St. Louis, for respondent.

HOUSER, Commissioner.

This is a suit in equity to construe the renewal provision of an industrial lease. Henry C. Beckmann Realty & Investment Company, owner of Lot No. 4 (containing 2.95 acres, or 125,000 square feet) of a certain subdivision lying south of a branch of the Missouri Pacific Railroad in the City of St. Louis, entered into a written lease of Lot No. 4, together with the use of certain railroad spurs and switches, to York Pharmacal Company and another corporation. The renewal provision in question reads as follows:

"The rental for each renewal term herein provided for shall be based on the net six per cent. return to the Party of the First Part, its successors or assigns on the then value of the land, allowing one acre additional in said valuation, for the approaches over Lot No. 2 to Lot No. 4 herein described, plus $3,000.00 for the switches herein leased."

York Pharmacal Company, unable to determine the proper formula for fixing the value of the additional one acre mentioned in the quoted provision for the approaches over Lot No. 2 (which adjoins Lot No. 4) brought suit alleging a conflict between the parties in that the realty company contends that the additional acre be valued at the average value of the other acres whereas the pharmacal company contends that the additional acre be valued at a considerably lower figure. The pharmacal company prayed for a construction of the lease, a declaration of the rights of the parties thereunder and a judicial determination of the method of evaluating the land for the purpose of fixing the renewal rental. The realty company filed a general denial, alleged that the language of the renewal provision was not ambiguous and prayed that the court either dismiss the petition or enter a decree finding that as a basis for arriving at the renewal rental there should be added to the valuation of the land actually used a value equivalent to one more acre, at the same valuation, plus $3,000.

The case was tried in an equity division of the Circuit Court of the City of St. Louis. The president of York Pharmacal Company testified that at a conference between the parties relating to the renewal of the lease an appraiser representing the realty company stated that he could not interpret the lease and that an interpretation by the court would be required. An industrial real estate broker and appraiser, testifying as the pharmacal company's expert witness, gave Lot No. 4 a value of $65,500, figured as follows: 125,000 square feet at 50 cents per square foot, plus $3,000 for the spur approaches. In valuing Lot No. 4 he stated that he gave consideration to the words "allowing one acre additional in said valuation" but under his interpretation the value of the 2.95 acres was unaffected by these words—that he gave that "one acre" no value; that the value of the ground is the sum of all things leased, i. e., the ground *and* the easement, so that there is no added value by reason of the approach; that if a monetary value is to be assigned to the easement it must come off Lot No. 2; that the easement over Lot No. 2 has no value in valuing Lot No. 4; that the value of the usable ground (50 cents per square foot) plus $3,000 determined the value to be assigned to Lot No. 4 and that if you figure it on "one acre additional" or 3.95 acres you should use the reduced factor of 35 cents per acre in valuing the ground. No evidence was offered by the realty company.

The chancellor found that the renewal provision means "that after the valuation of the land actually used and occupied by the lessee has been arrived at, whether by mutual agreement or by the use of appraisers, then there shall be added to such valuation an additional one acre, valued at the same rate that the other land has been valued at per acre, and then there shall be

added thereto the amount of $3,000.00 representing the agreed value of the switches leased, and then there shall be calculated an annual rental for the renewal term amounting to a 6% return on the combination of all three figures aforesaid, namely (1) the value of the land leased, (2) plus the value of an additional one acre, at the same rate of value as the land leased, (3) plus $3,000.00 for the switches." From the decree of the circuit court York Pharmacal Company appealed to the Supreme Court which, lacking jurisdiction, transferred the cause to this court for determination.

Contending that there is a definite ambiguity requiring construction, appellant makes two points: (1) that the court erred in failing to follow the interpretation of appellant's expert witness and (2) that the decree was against the weight of the only evidence offered. Subordinate rules of construction upon which appellant relies are those which declare that where a covenant in a lease is susceptible of different constructions that most favorable to the lessee will be adopted, and that it is the business of the lessor to have the agreement expressed in clear and certain terms.

 The court below did not err. Appellant did not establish the existence of an ambiguity by showing that it is unable to understand the provision in question and that there is a disagreement between the parties as to its meaning. A mere disagreement as to the construction to be given to a written contract does not create an ambiguity. Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W. 2d 731, 738. Nor has appellant pointed out any ambiguity in the language of the renewal provision, and we find none. Without resort to any other guide than a knowledge of the simple facts upon which its meaning depends, see Riggs v. Myers, 1855, 20 Mo. 239, and applying to the words used their common and ordinary meaning, the renewal provision clearly means what the chancellor found that it means. The words "the then value of the

land" obviously refer to the valuation to be placed upon Lot No. 4 at the time the renewal provision is invoked. The clause "allowing one acre additional in said valuation for the approaches, etc." is not ambiguous. The word "additional" means something that is added to something that is already in existence so as to form an aggregate. Ex parte Boddie, 200 S.C. 379, 21 S. E.2d 4. The word "said" means "'before mentioned,' 'already spoken of,' 'aforesaid'; it refers to an appropriate antecedent." Baird v. Johnston, 230 Iowa 161, 297 N.W. 315, 316. "Said valuation" refers to the valuation of Lot No. 4 provided for in the clause immediately preceding. It is clear that the one acre to be added to the before mentioned valuation of Lot No. 4 is a payment for the use of the approaches to Lot No. 4 over abutting Lot No. 2, and that the sense of the clause is to allow for these approaches the value of one acre in addition to the value of the 2.95 acres at the same value as that assigned to one acre under the phrase "the then value." The language of the clause in question is not reasonably susceptible of more than one construction. The language employed clearly reveals the manifest intention of the parties. The meaning and purpose of the clause is clear. It cannot be ignored, excised or whittled away by interpretation, but must be given force and effect.

 Since there is no ambiguity in the renewal provision there was no necessity of resorting to parol or extrinsic evidence to ascertain the meaning of the language used by the parties. Wood v. Utter, 229 Mo.App. 309, 77 S.W.2d 832. Had such evidence been offered it properly would have been ruled inadmissible. Haley v. Sippley, 317 Mo. 505, 297 S.W. 362. The interpretation of an unambiguous provision of a lease is a matter of law for the court to determine, Witting v. St. Louis & S. F. R. Co., 28 Mo.App. 103, loc. cit. 115; Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W.2d 34, loc. cit. 39, without the aid of parol or extrinsic evidence. Accordingly, the interpretation of the re-

newal provision of the lease given by appellant's real estate expert was not pertinent to the inquiry and was properly disregarded by the learned chancellor, who undertook to ascertain the meaning of the language used by the parties by resorting alone to the instrument itself. His construction of the renewal provision is in accord with the manifest intention of the parties, the common understanding of common words and good business sense. There was no error in failing to follow the interpretation of appellant's expert witness or in deciding the case "against the weight of the evidence."

The decree of the circuit court should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The decree of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.