1 Mich. App. 624 (1965)
137 N.W.2d 764
In re GRAHAM ESTATE.
VENEKLASEN
v.
SALVATION ARMY.
Docket No. 326.
Michigan Court of Appeals.
Decided November 15, 1965.
Leave to appeal granted January 26, 1966.
Warner, Norcross & Judd (Thomas R. Winquist, of counsel), for Robert J. Veneklasen.
Uhl, Bryant, Wheeler & Upham (Gordon B. Wheeler, of counsel), for Salvation Army.
Leave to appeal granted by Supreme Court January 26, 1966. See 377 Mich 699.
HOLBROOK, J.
Robert D. Graham died August 24, 1926, leaving a last will and testament dated August 31, 1925, duly admitted to probate. In his will, the testator established a trust for the benefit of his niece, Ada Dorothy Veneklasen, effective as long as she lived. Upon the death of the life beneficiary, paragraph 11 of the will provided for the termination of said trust and the disposition of the corpus as follows:
"Upon her death, I direct my trustee to pay, deliver and convey this trust fund and accumulations to her issue by right of representation; and if she is *627 without issue then surviving, or if she does not survive me, I direct my trustee to keep this fund and accumulations as a perpetual trust fund and to pay the net income arising therefrom, in semiannual installments, to the Evangeline Home and Hospital of the Salvation Army."
Ada Dorothy Veneklasen died on March 29, 1963. leaving no issue born of her body surviving. She did, however, leave one adopted son, Robert J. Veneklasen, whom she had adopted June 9, 1928, and who had been born November 17, 1926.
The trustee of said trust filed with the Kent county probate court a petition praying for allowance of its final account and construction of paragraph 11 of the will for determination as to whether or not an adopted son falls within the definition of "issue" as contained in such will.
The probate court construed the word "issue" to include Robert J. Veneklasen, the adopted son of the life beneficiary, holding that he was the sole surviving issue of the life beneficiary, Ada Dorothy Veneklasen. The Salvation Army filed an appeal to the circuit court for Kent county, from the order of the probate court, and the learned trial judge, after hearing the appeal construed the will, holding that the adopted son of the life beneficiary was not included in the term "issue" used by the testator in his will. From the order of the circuit court reversing the probate court, and remanding the matter for entry of an order in accord with its decision, appellant appeals.
In construing the will of a testator, it is a cardinal rule for courts to seek and give effect to the intention of the testator so long as the will is legal. Intention must be ascertained from consideration of all provisions of the will in light of the circumstances surrounding *628 the testator at the time the will was made.[1]
In 86 ALR2d 12, under the topic "Adopted child as within class in testamentary gift," on p 69, it is stated:
"§ 15. In a number of cases it has been held that a testamentary provision for the `issue' or `lawful issue' of a designated person did not include a child adopted by that person. As a basis for excluding the adopted child from a class designated as `issue,' many courts have reasoned in substance that the primary, ordinary, or usual meaning of the term `issue' is natural-born children and excludes adopted children."
Under this general statement of the law appear cases cited from 16 states including Michigan.
In the case of In re Chapple's Estate (1953), 338 Mich 246, the testator made a trust in favor of his daughter, Rena B. Chapple, for her lifetime and upon her death, should she die leaving issue, said trust estate to be divided into as many equal shares as there were children of his daughter and issue of deceased children surviving her. Provision was made for alternative contingent beneficiaries. Testator died September 10, 1919. The daughter married Harry R. Trull in 1916, and a son and daughter were adopted by Mr. and Mrs. Trull in 1921, and 1925, respectively. Rena C. Trull died November 10, 1950, and left surviving her the 2 adopted children and her husband. At no time did she have any natural children. The circuit judge, therein, affirmed the decision of the probate judge, excluding the adopted *629 children as "issue," and Mr. Justice BUSHNELL stated on pp 249, 251-253 as follows:
"`Since Elizabeth Trull Hartman and Robert Raymond Trull were adopted by the daughter of the testator after the death of the testator, under the doctrine announced by the Michigan Supreme Court in Russell v. Musson, 240 Mich 631, they cannot take as "issue" or "children".' * * *
"We prefer to dispose of the adoption question first.
"In the Russell Case, supra, * * * it was held:
"`That when a will provides for a child of some person other than the testator, an adopted child is not included, unless the will makes it clear that the adopted child was intended to be included. The rule does not appear to be applicable where the testator has himself adopted a child. In the instant case the children were not adopted until after the will was made and testator was declared incompetent. There is nothing in the will which indicates that testator intended they should be included. In view of this we must hold that the adopted children do not satisfy that provision of the will.'
"This rule, enunciated in 1927, has not been changed either by statute or decision. It is suggested that its reasoning ignores the purport of the Michigan statute, which makes an adopted child an heir-at-law of the adopting parents and entitled to inherit property from such parents in accordance with the law of descent and distribution. CL 1948, § 710.9 (Stat Ann 1951 Cum Supp § 27.3178[549]). See, also, Burk v. Burk, 222 Mich 149, 152, and In re Rendell's Estate, 244 Mich 197, 200.
"Notwithstanding that suggestion we adhere to the rule expressed in the Russell Case, supra, and hold, as did the probate and circuit courts in the instant case, that the testator intended the property in question should only go to the surviving natural children and their children if any such children survived his only daughter. * * *
*630 "`It almost goes without saying that the primary rule of construction of wills is to reach, if possible, the intent the testator had in mind and give effect to it. The whole will is to be taken together and is to be construed as to give effect, if possible, to every part. Thurber v. Battey, 105 Mich 718; Townsend v. Gordon, 308 Mich 438 (151 ALR 1432). In construction of a will all the words therein must be taken into consideration. Tonnelier v. Westin, 302 Mich 213.'" (Emphasis supplied.)
The cases thus far discussed involve the interpretation of the meaning of "issue" under the adoption statute prior to its amendment by PA 1957, No 255 (CLS 1961, § 710.9[Stat Ann 1962 Rev § 27.3178 (549)]).
The question arises whether the adoption law in effect at the death of the testator (1926) is applicable or the amended statute of 1957, to determine the meaning of "issue."
In re Miner Estate (1960), 359 Mich 579, casts some light on the question before this Court. The facts therein were briefly that Louise H. Miner died October 5, 1957, leaving a will which bequeathed the bulk of her estate to a surviving adopted daughter, Kathleen Miner Crary. John Miner Caruthers, natural son of Maxine Miner Caruthers and her husband, Eugene Caruthers, appeared and filed objections to the will. His mother had been legally adopted by Louise H. Miner. The proponents of the will filed a motion to dismiss on the ground that the contestant was not a person who had any interest in the estate of Louise H. Miner. The circuit judge granted the motion to dismiss. Mr. Justice EDWARDS on pp 582-585 of the opinion stated as follows:
"The word `issue' is statutorily defined as including `all the lawful lineal descendants' CLS 1956, § 8.3, subd 8 (Stat Ann 1957 Cum Supp § 2.212, subd 8).
*631 "Hence, the question becomes, is Caruthers, on this record, a `lawful lineal descendant' of the deceased, Louise H. Miner?
"Just 2 weeks prior to the death of Louise H. Miner in 1957, an amendment to the adoption statutes of Michigan became effective. The section with the new language italicized now reads as follows:
"`Upon the entry of the order of adoption, such child shall, in case of a change of name, thereafter be known and called by said new name, and the person or persons so adopting said child shall thereupon stand in the place of a parent or parents to such child in law, in all respects as though the adopted child had been the natural child of the adopting parents, and be liable to all the duties and entitled to all the rights of parents thereto. Thereupon there shall be no distinction in any way between the rights and duties of natural children and adopted children, and such child shall thereupon become the heir-at-law of such adopting person or persons, as well as the heir-at-law of the lineal and collateral kindred of the adopting person or persons, and entitled to inherit property from such person or persons in accordance with the law of descent and distribution of this State: Provided, That nothing herein shall affect his right to inherit from or through his natural parents. On the death of the adopting parents, custody of the adopted child shall be determined as though the child was natural born of the adopting parents.' CLS 1956, § 710.9, as amended by PA 1957, No 255 (Stat Ann 1959 Cum Supp § 27.3178 [549]).
"It appears clear that it is this statute which is controlling in our present case since it is the one which was in effect at the death of the intestate. In re Loakes' Estate, 320 Mich 674; In re Dempster's Estate, 247 Mich 459.
"See, also, 18 ALR2d 960." (Emphasis supplied.)
Also, see In re Smith Estate (1955), 343 Mich 291 (51 ALR2d 847).
We find the law controlling this case reflected in *632 4 Page on Wills (Bowe-Parker Rev, 1960), § 30.27, p 169, as follows:
"It has been suggested that the law as it stands at the death of the testator determines the construction of the will. * * * A statute which is passed after testator has died cannot change the construction of the will. A change of law after the will has been admitted to probate does not affect its construction."
And, in the same volume, section 34.22, p 445, as follows:
"Issue is a word whose primary meaning, in the absence of anything to show a contrary intent, is that of legitimate lineal descendants indefinitely. * * * It has been said that `issue' does not mean heirs at law, whether at common law or under the statute of descent. * * * It does not include an adopted child." (Emphasis supplied.)
Our Supreme Court has ruled that a will speaks from the date of the death of the testator; Ludington State Bank v. Estate of Rath (1936), 274 Mich 463, In re Allen's Estate (1927), 240 Mich 661, American Brass Co. v. Hauser (1938), 284 Mich 194; and in construing the terms of a will, the same is not operative until the death of the maker but speaks the intention of the testator as of the time of its execution; and the construction of a will must not be varied by events subsequent to its execution. Morrow v. Detroit Trust Company (1951), 330 Mich 635.
We conclude that to accomplish the intent of the testator, we are constrained to construe the will in the light of the law existing at the date of the death of the testator. He could be presumed to know the law at the date of his will,[2] and presumably until *633 the date of his death, however, it is difficult to conceive of his ability to foretell a future change in the law.
We construe the word "issue" used by the testator in his last will in paragraph 11 as not including Robert J. Veneklasen, adopted son of Ada Dorothy Veneklasen, the life beneficiary.
Judgment affirmed, costs to appellee.
FITZGERALD, P.J., and McGREGOR, J., concurred.
NOTES
[1] In re Estate of Darmstaetter (1940), 293 Mich 596; In re Lowrie's Estate (1940), 294 Mich 298; Tonnelier v. Westin (1942), 302 Mich 213; Hay v. Hay (1947), 317 Mich 370; Parrish v. Van Domelen (1952), 335 Mich 23; Goembel v. Bonine (1953), 336 Mich 73; Grover v. Wood (1953), 337 Mich 467; In re Chapple's Estate (1953), 338 Mich 246; In re Estate of Sewart (1955), 342 Mich 491 (52 ALR 2d 482); In re Hicks Estate (1956), 345 Mich 448; In re Lawton Estate (1956), 347 Mich 143; In re McKay Estate (1959), 357 Mich 447; Mills v. Butler (1961), 364 Mich 422.
[2] "Courts have repeatedly recognized that the maker of the will was presumably familiar with the laws of his own State. * * * Such situation may not be ignored in the construction of the language of a will." In re Sewart Estate (1955), 342 Mich 491, 497.